IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**TRACY LYVETTE YOUNG**                                                     **PLAINTIFF**

**V.**                            **CIVIL ACTION NO. 1:22CV-103-DAS**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**            **DEFENDANT**

## MEMORANDUM OPINION AND JUDGMENT

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision by the Commissioner of the Social Security Administration regarding her application for disability insurance benefits and supplemental security income. The parties have consented to entry of judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Fifth Circuit Court of Appeals. The court, having reviewed the administrative record, the briefs of the parties, the applicable law, and having heard and considered oral argument, finds the decision of the Commissioner of Social Security should be affirmed.

## FACTS

Tracy Young filed for benefits on September 22, 2020, alleging onset of disability commencing on March 13, 2020. The Social Security Administration denied the claim initially and on reconsideration. Young's insured status will not expire until March 31, 2025. Following the hearing, the ALJ issued an unfavorable decision on January 13, 2022. (Dkt. 10 p. 16-34).[1] The Appeals Council denied the request for review, and this timely appeal followed.

---

[1] All references are to the administrative record using the court's numbering system, rather than the administrative numbering.

The ALJ found Young's severe impairments were polyarthritis, degenerative joint disease in both knees and obesity. She found her depression was not severe. At Step 3 the ALJ found Young did not meet any listing.

The ALJ found Young retained the residual functional capacity (RFC) to perform a limited range of light work. She can lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently. She can sit, stand, or walk for six hours in an eight-hour workday. She will need to alternate between sitting and standing every thirty minutes while remaining on task. She can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds. She can only occasionally have exposure to dust, fumes, odors, pulmonary irritants, and areas with poor ventilation. She may need to occasionally elevate her feet up to stool height while seated.

The ALJ found that Young cannot perform her past relevant work as a daycare attendant, but based on the testimony of the vocational expert, the ALJ found Wilson could perform other jobs that exist in substantial numbers in the national economy. Young could perform the jobs of a merchandise marker, garment sorter, and postage router, each an unskilled job, performed at the light level of exertion with 50,000 jobs, 80,000 jobs and 50,000 jobs respectively in the national economy. The ALJ, therefore, determined that Young was not disabled through the date of decision.

## **ANALYSIS**

The plaintiff argues the ALJ erred 1) At Step 3 in finding she did not meet 14.06 and 14.09 of the Listing of Impairments; 2) In finding she had the residual functional capacity to perform a limited range of light work; and 3) in finding she could perform other work at Step 5.

**1. Step 3 Determination**

The Listing of Impairments sets out very specific regulatory criteria for various impairments that are so severe as to be found automatically disabling. 20 C.F.R. Pt. 404, Subpt P, App.1. The Listings in this case, 14.06 and 14.09, are part of the regulations addressing autoimmune disorders. A claimant's proof must exactly match, or medically equal, all the criteria included in a listing to be found disabled at Step 3. *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 517 (8th Cir. 2019). These two listings set out the criteria for deeming a claimant disabled because of either undifferentiated and mixed connective tissue disease, (14.06) or because of inflammatory arthritis (14.09).

The ALJ addressed the first of these listings as follows:

> The record demonstrates since the alleged onset date, the claimant has been treated for symptoms of polyarthritis including fatigue during the applicable period (Exhibits 2 F and 3 F). While the record demonstrates the claimant had some concern for inflammatory pain and subtle edema, there was no synovitis on examination and no other systemic lupus erythematosus or mixed connective tissue disease features, [other] than the possible frontal alopecia which was mild. Chest X-rays showed granulomas but chitrotriosidase was within normal limits (Exhibits 1 F-5 F) . Overall, the record fails to establish signs or symptoms which satisfy the subparagraphs A or B criteria. Accordingly, based upon the foregoing demonstrates, the undersigned fines the claimants' impairment failed to rise to the level of severity required to meet or equal listing 14.06. R. 23.

The 14.06 listing allows a claimant to meet either of two sets of criteria, but both of those alternatives include the requirement that the claimant must show "At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." 14.06 A.1 and 14.06B. The plaintiff's records show complaints of fatigue, but she did not experience fevers or involuntary weight loss secondary to her autoimmune condition. Young argues that in view of her being treated with citalopram, a selective serotonin reuptake inhibitor, the ALJ should have found her depression was severe, thereby meeting the required second

3

constitutional symptom—malaise. The court finds the ALJ did not err in finding Young's depression was not severe. The state agency medical consultant who assessed her mental limitations found her depression was not severe providing substantial evidence to support the decision. Because the record supports finding that Young's only constitutional symptom was fatigue, the ALJ did not err in finding she failed to meet this listing.

Young also contends she meets the requirement of 14.09D which is one of several different criteria for assessing inflammatory arthritis. This part of the listing requires that the record establish:

> D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at marked level:
> 1. Limitation of activities of daily living.
> 2 Limitation in maintaining social functioning.
> 3 Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace.

The ALJ decision states:

> The record demonstrates the claimant has been treated for symptoms of polyarthritis during the applicable period. (Exhibits 2 F and 3 F). However, the record fails to demonstrate evidence of inflammatory arthritis with constitutional symptoms or signs which satisfy the subparagraphs A, B, C, or D criteria. R. 25.

The ALJ decision also addressed the plaintiff's impairments in activities of daily living, social functioning and concentration, persistence and pace. R. 20-21.

Young's proof also fails to meet the criteria in this listing. As noted above, the failure to find the plaintiff's depression was a severe impairment is supported by substantial evidence, and thus, the ALJ did not err when he found Young did not suffer two constitutional symptoms. Nor did the ALJ err in his determination that the plaintiff did not have a marked limitation in activities of daily living, maintaining social functioning or completing tasks in a timely manner because of problems with concentration, persistence or pace. The ALJ

4

expressly found Young had only mild limitations in these three areas of functioning. R. 21. This finding is supported by Young's Adult Function report where she admitted she could work from a seated position for three hours per day. She said she could perform needed personal care and activities of daily living such as folding laundry and preparing small meals. She was able to shop, go out alone, engage in social activities and handle stress. R. 31. This evidence is consistent with the finding that she suffered only mild limitation in these areas of functioning. Young, therefore, did not meet this listing.

### 2. Assessment of Residual Functional Capacity

Next, the plaintiff argues the ALJ erred in assessing the plaintiff's RFC, urging the court to find it is not supported by substantial evidence. The plaintiff testified to symptoms and limitations which, if credited, would restrict her to sedentary work or perhaps no work. Because she aged out of the younger individual category while her claim was pending, such a finding would likely lead to a determination that she is disabled. However, the ALJ found her testimony of subjective symptoms was not well-supported in the record, and there is substantial evidence to support the ALJ's decision. Both state agency medical consultants who assessed Young's physical RFC found she was able to perform at a full range of light work. The ALJ found these opinions were not persuasive because he thought Young had greater impairments, leading to a more limited RFC. The ALJ acknowledged Young's obesity "imposed some limitations with managing the related edema and pain symptoms as October 2020 records indicated the claimant's leg swelling was associated with the claimant's weight gain." R 26. But the ALJ also noted medical records that she had a steady gait, though she appeared to be uncomfortable. Other records showed complaints of pain and some swelling in

5

her knees, but the physical examination of her lower extremities was normal; her range of motion was normal; and the neurological exam was normal.

The ALJ discussed her medical records in detail before assessing her as capable of performing light work, with significant additional limitations beyond those assessed by the state agency doctors in the prior administrative medical findings. The ALJ found Young could walk and stand for six hours during an eight-hour workday, but that she needed to be able to alternate between sitting and standing every thirty minutes, while remaining on task. In addition to postural and environmental limits, the ALJ found Young would occasionally need to elevate her feet to stool height when sitting.

The decision shows careful consideration of the evidence in the record, and because there is substantial evidence to support the RFC, the court finds no error in this assignment.

### 3.  Step 5 Determination

Finally, the plaintiff argues that the ALJ erred in finding the plaintiff could perform other work. While it is true that the vocational expert testified there would be no jobs that could be performed if Young were off task 15% of the workday, the ALJ did not find Young would be so restricted. The ALJ assessed an RFC that is supported by substantial evidence and put a hypothetical question to the vocational expert accurately setting out Young's capabilities and restrictions. The VE, testified, based on the hypothetical, to three different jobs that would fall within Young's RFC. Accordingly, the court finds no error at Step 5.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner is affirmed.

**SO ORDERED AND ADJUDGED** this the 12th day of May, 2023.

/s/ David A. Sanders  
**U.S. MAGISTRATE JUDGE**